The last case up this morning is 410-1048, People v. Robinson. For the appellant is Christopher Kierkegaard. Is that pronounced correctly, sir? Yes. I think it is. And Denise Ambrose for the People. Mr. Kierkegaard, you may proceed, sir. Thank you, Your Honors. Good morning. Good morning. Again, my name is Christopher Kierkegaard. I'm with the Office of the State Appellate Defender here on behalf of Alfred Robinson. If it pleases the Court, I'd like to discuss the two primary issues raised in Mr. Robinson's brief. The first being that my client's post-conviction petition made a substantial showing of a constitutional violation when he alleged that trial counsel was ineffective during plea negotiations. And the second is that post-conviction counsel failed to provide adequate representation when he misunderstood my client's claims and argued against my client's petition before the trial court. Now, turning to the first issue, I'd like to begin by addressing res judicata. Both Mr. Robinson and the State agree that this doctrine does not bar litigation of a claim that relies upon facts that were not in the original appellate record. The State also agrees that Mr. Robinson's post-conviction petition includes additional evidence, where both parties disagree as to whether this additional evidence is cumulative, which is the State's position. However, this is not res judicata because the appellate court's holding on direct appeal was based precisely upon its belief that there were no ongoing plea negotiations after April 30th of 2007. However, Robinson's attached documentation, namely a letter from defense counsel to him, his own affidavit, and a letter that he wrote to the State's attorney Hoar, clearly show that eight- and nine-year plea offers were made after April 30th. Well, what is the complaint of your client regarding his attorney? What did his attorney not do that he should have done? Well, what his attorney did was fail to convey his acceptance of the State's plea offer. He failed to do what? Convey his acceptance of the State's plea offer of eight years is the first claim that he made, Your Honor. He never accepted it, did he? Well, he did accept it, Your Honor. Didn't he say, go tell them, go back and say, I'll take seven. I want seven, but if they won't do that, then I'll take eight. What he said was, see if you can get seven, and if not, I'll take eight. So if he can get seven means tell them I'll take seven, and if not, then I'll take eight. Isn't that what it means? Obviously, any criminal defendant would prefer to have the lowest possible sentence, Your Honor. Counsel, that's not my question. Isn't that what it meant? Go back and tell them I'll take seven, and if they won't agree to that, then I'll take eight. What he said was he'll take eight unless defense counsel determines he can't get seven. While it's Robinson's ability to do that. What was counsel supposed to do based upon what he was told by his client? What he was supposed to do. Well, here it's clear that from Robinson's affidavit that his counsel believed that he could not ask for seven or that he couldn't get seven at which point. I try to ask my questions carefully and definitively, and I'd appreciate it if you'd answer those questions. What was counsel supposed to do based upon what his client told him? He was supposed to accept the eight because he had determined that seven wasn't a possibility. Was he supposed to go back and talk to the prosecutor? He was supposed to go back and talk to the prosecutor. What was he supposed to tell the prosecutor? He was supposed to accept the eight because he had determined that seven wasn't a possibility. The Robinson's affidavit indicates that counsel refused to go back with seven. While it's Robinson's right to accept or reject a plea offer, it's counsel's province to determine plea negotiations. He has domain over plea negotiations and trial strategy. If counsel had determined that seven wasn't a possibility and he couldn't ask for seven without fear for maybe that the prosecutor would revoke the claim or revoke the offer, he had a duty to accept it. Robinson said, take the eight if you can't get seven. Hence, counsel determined he couldn't get seven, so he should have taken the eight. So the counsel should have ignored the if you can't get seven entirely? Absolutely not. The question that Robinson was asking wasn't whether he should have asked necessarily for seven. It's whether he could get seven. If defense counsel determined that he could not get seven, not even asking for seven would be unfair. How and when is defense counsel supposed to determine that? It depends on the circumstances of the situation. In this case, how and when was counsel supposed to determine that? Counsel obviously had been negotiating with the prosecutor for a long time. It's unclear. It's exactly why we need an evidentiary hearing in this case, because the facts aren't fully fleshed out as to what the prosecutor told counsel. Perhaps the prosecutor told counsel that if you ask for anything lower than eight, I'm revoking the offer and we're going to try it. That might have been why the trial counsel determined that he shouldn't go back and ask for seven. But that doesn't remove the idea that he should have accepted the eight. Ms. Robinson said, I'll take the eight. The client says, what should his attorney have done with regard to the business about see about seven or ask about seven? Should that have just been ignored? It shouldn't have been ignored, Your Honor, but it's not. What should he have done with it? He should have considered whether or not seven was a possibility, whether he should ask for seven. He had no duty to convey. I don't think trial attorneys have a duty to convey every offer that their defendant wants them to ask, because it's trial counsel's domain is over trial strategy and plea negotiations. Obviously, Ms. Robinson has said, see if they'll just let me go. So your position is this case is precisely the same as if the defendant had said, I'll take eight, period. Not precisely the same, Your Honor. How is it different? It's a little bit different because counsel had to first make the determination as to whether or not he could get seven. Again, counsel has sole domain over trial negotiation and trial strategy. If counsel determined that he should not ask for seven because it would be a detriment to his client, and again, we don't know, which is why we need an evidentiary hearing here, Robinson essentially said, take the eight unless you can get seven. If he determined he couldn't get seven, which he was allowed to do, he should have accepted the eight on his client's behalf. Didn't he tell his client that he's not going to go back and ask for seven? He did say that, Your Honor, yes. And did his client say, well, in that case, then tell him I want eight? No, what he said, you're right. Something less than that, was it? Well, there was a disagreement, Your Honor, yes. Well, is there any disagreement that your client did not say, okay, I'll take eight? No. I mean, there's no disagreement. He said, take the eight unless you can get seven. Counsel said, I'm not going to go back there, and there was a fight, and counsel was sent away. I'm sorry, and my client was sent away from counsel, and there's no indication that counsel engaged in any further plea negotiations at that point. Was he required to engage in further plea negotiations? Yes, because his client told him to accept the eight. Well, that's not plea negotiations, counsel. That's just conveying an acceptance. Excuse my semantics, Your Honor. Well, no, this is real important in this case, counsel. Precision of language is critical here. So I want to make sure what we're talking about. Was he required to engage in further plea negotiations at that point? Yes. He was not required to engage in further plea negotiations. He was required to accept the state's offer of eight years. What we have here is Mr. Robinson said, see if you can get seven, and if not, I'll take the eight. And defense counsel determined he could not get seven, and yet he didn't do anything else. So why doesn't that sound like an acceptance short of a total acceptance by your client? In other words, it's not an unconditional, I'll take eight, is it? He said, I'll take eight unless you can get something better, essentially, Your Honor. Unless I can get something better means I'm not ready to take eight until you've tried? No, it doesn't mean that. What does it mean? Tell me again what counsel should have done. It means he should have accepted the offer of eight years because counsel had determined that he could not accept it. Well, but that's not what your client said to him. What does client mean? I asked you earlier, is the position of your client the same as if he had turned to counsel and said, I'll take eight? You said no. Well, I think the position of my client, yes, but of what counsel had to do, no. Counsel had to make the determination if he could go back. I don't understand what you just said. Is the position of your client the same as if he had just said, turned to his attorney and said, I'll take eight? The position of my client is that his attorney should have accepted the offer of eight years because his attorney determined that he could not go back and ask for seven, and it wasn't his client, and it wasn't Mr. Robinson's ability to do so. So counsel should have ignored the business about seven years and whatever else your client had said? Well, it depends, but we don't, the problem is here, Your Honor, we don't have the facts to determine why counsel made that decision. If counsel had known that the state was amenable to eight years. What about the letter from counsel dated July 16th that the defendant attached to his petition? Go ahead. Well, where Dobbs says, I think the prosecutor has revoked his previous offer of eight years at this point. He seemed extremely agitated that you requested a seven-year offer after previously indicating you would accept eight. He's now informing me that the offer is again nine. Now, aren't those facts in this case? That's what the defense counsel's letter says, yes, Your Honor. I think what the letter shows, however, is that there clearly was an offer of eight years on the table. It shows that defense counsel knew that. What it sounds like to me is the defendant said, offer or ask for seven. Counsel went ahead and asked for seven. That really ticked off the prosecutor. Prosecutor says, forget about it. Nine years is the best I'm going to go with. I don't think so, Your Honor. I think if you look at, that letter was written in response to the letter that my client wrote to the state's attorney after his counsel refused to accept the eight-year offer. Well, my client wrote specifically to the state's attorney in a file stamp letter that he attached to his petition saying, you know, there was an offer of eight years. I told the state's attorney to see if he could get seven. My client, defense counsel, refused to do so. We had a fight. I was sent away. In response, the state forwarded that letter. So he says, I told my attorney to see if he could get seven. In that letter, yes, Your Honor. Isn't that rather different than I told him, yes, I'll take eight? Well, if you look at defense counsel's letter, which Justice Cook just pointed out, indicated that he did say that he wanted to take eight. Counsel was aware that his client wanted to take an offer of eight. And he said that, and he was clearly aware that there was an offer of eight available. So I think what the defense counsel's letter actually shows is that he knew that his client wanted to take an offer of eight. He knew there was an offer of eight, and yet there was no plea agreement here, at which point my client apparently felt that he had to try to take negotiations into his own hands at that point, which I think clearly shows a failure of counsel in that respect. You know, this whole idea. As lawyers, we're familiar with negotiations all the time, where things go back and forth, and you make strategic decisions. And then after it's all over, you say to yourself, oh, I wish I had taken that offer back early on. And what a wonderful advantage defendants have in this situation now. They get to file this motion saying, oh, in hindsight, my counsel was ineffective for not taking that offer back early on in this. You know, negotiations are such a back-and-forth thing. The idea that all of a sudden, at the end of everything, you can accept something that was not accepted before is sort of startling to me. Well, again, you're right. The defendants do have an advantage here, because at the second stage, everything that my client says in his petition and everything well-planned in his petition and all supporting documentation must be taken as true, and it must be liberally construed in his favor by this court. Therefore, while, you know, we don't know what happened, Ron. That's why we need an evidentiary hearing. It certainly could come out in an evidentiary hearing that that's exactly what happened here, but we don't know. Taking my client's petition and affidavit and the two letters that he attached to his affidavit as true. My client's defense counsel told him that there was an eight-year offer, and then refused to accept the eight-year offer on my client's behalf. You know, the affidavit that your client attaches to his petitions does not say he told his attorney to accept the eight-year offer. It says, defendant asked Dobbs to see if he could get it down to seven years, and if not, then he would take eight years. That's not an acceptance of eight. That's an offer for seven. I think that is an acceptance of eight, Your Honor, because it wasn't with – my client did not have the ability to direct trial counsel to negotiate, give specific numbers on his behalf. What he was asking wasn't necessarily – he didn't really care whether defense counsel actually asked whether there was seven. What he cared about was whether he could get seven. So we should ignore what he put in his own petition? No, you shouldn't ignore it, Your Honor, but you should take it in consideration with what defense counsel's rights – or not defense counsel's rights, but what defense counsel has domain over in this case. So we should read it as saying, I said I would take eight. You should treat it as saying that he said, take the eight unless you can get seven, and defense counsel determined he couldn't get seven. You keep reversing it. You keep saying it the way – you keep saying it backwards from what defendant said. Defendant said, ask for seven, and if not, I'll take eight. Every time you say it, you say, defendant said, I'll take the eight, unless you can get seven. Right. I mean, you're right. I mean, his affidavit and his petition say – his petition says, petitioner would like to see if he could get seven years, but if not, let them know I'll take the eight. His affidavit says, see if you can get it down to seven, and if not, I'll take the eight. Here, defense counsel determined he couldn't get it down to seven, and so he should have accepted the eight. There is still an argument – You just ignore the statement of defense counsel that once he tried to get it down to seven, the state's attorney was really ticked off and said, wait a minute, we're done with this. No, that's not what that letter says. That letter is a response to the letter that my client wrote to the state's attorney, in which he explained this whole scenario about asking for eight, and defense counsel refusing it. Later in that letter, he said, if we could have six or seven, we'd just be done with this. At which point, the defense counsel wrote a letter saying, I know there was an offer of eight out there, I know you wanted to accept the eight, and now the state's attorney is mad that you sent him this letter. The reason he sent that letter is because his counsel failed to accept the plea offer on his behalf. What does the involvement of contract law principles have in this whole transaction? I think contract law principles are applicable here, but strict construction of contract principles – Well, if there's an offer of eight, and the offer is not accepted, but rather counter-offered to seven, the counter-offer is rejected, is there formation of a contract? In that scenario, no, Your Honor. But here, your inquiry has to have a better offer. First of all, it's important to note that the defense counsel never actually communicated, or it's unclear from the record whether he actually ever communicated the seven-year to the state. If the defense counsel had actually said he'll only take seven, that might operate as a counter-offer. But here, the question here is whether trial counsel was in effect or failing to convey his acceptance of eight. And here, merely inquiring as to a better offer is not a counter-offer, and even a counter-offer isn't a counter-offer where the person – What do you mean merely inquiring as to a better offer isn't a counter-offer? It's in the second – I mean, it's like you're selling a house, and, you know, the guy offers you $200,000 and says, well, what do you think about $205,000? Well, Your Honor, it's – Is that a counter – I mean, what – That's not a counter-offer. What is it? We're just sitting here musing? Is that where we're talking about a musing, not a counter-offer? No, Your Honor. What would you characterize it as? Well, as Your Honor said before, semantics is important here. If you look at the second restatement of contract, it's merely inquiring as to a better offer saying, well, what do you think about this would be considered a mere inquiry as a better offer. But that's exactly – that's a similar scenario that's actually in the actual example given in the second restatement of contract, which says, you know, for example, in a case I said in my brief where – in a Maryland case where someone said, well, what do you think about an offer plea? That was not considered to be a counter-offer. It was considered to be a mere inquiry as a better offer. That all depended on how counsel might have conveyed that. But what was conveyed to counsel was take – was, excuse me, see if you can get 7. If not, I'll take the 8. And so what was conveyed to counsel is inquire as to a better offer. And if you can't, I'll take the 8. So wouldn't the – wouldn't defense counsel hearing that understand that he should then ask for 7 from – that's what his client's position is, that he's not ready to take 8? No, I think it says he's ready to take 8 unless you can get 7. And how would – and again, you're advising the defense attorney in that position, and you turn to him and say, okay, now this is what you should do. What would you advise him? What I'd advise him is if you determine – if you think that it's reasonable to get 7, you should ask for 7. If you determine it's unreasonable, you should ask for 8. But here we don't have the facts, and this is exactly why we need evidence. But defense counsel did exactly what the defendant asked him to do. He flew the flag of 7 years to the prosecutor. Prosecutor became irate because he'd already gone down to 8 and said, that's it, you're done. I don't think that's what the record says, Your Honor. That's what the letter says. The letter says that when you said 7, defense counsel never went back. As far as I can tell from the record, defense counsel never went back and asked for 7. Well, there's no record of plea discussions, is there? No, of course not, Your Honor. So you're basically suggesting that the letter from defense counsel to the defendant explaining what had happened, he said he went back and asked for 7. The prosecutor became, I think the quote is, very agitated and said, 8's off the table because you asked for 7. He did exactly what your client asked him to do. It had unintended consequences. Your Honor, I think if you look at the letter closely, it doesn't say that defense counsel asked for 7. It says he's mad about the letter that my client wrote to the state's attorney. After defense counsel said he's not going to go back and ask for 7, my client wrote a letter saying, you offered, or the state offered, 8 years. And I asked him to go back for 7. We had a fight, and then he didn't do anything. And if we could have 6 or 7, we would just be done with this. And that was the letter written after all the ineffective conduct that I was talking about. Anyway, and that letter was written in response to that. In addition, Your Honor, I think that letter is very confusing. It exactly shows why we need an evidentiary hearing in this case. First of all, the letter totally contradicts itself. It begins by saying, the time for negotiation has come and gone. It ends by saying, there's an outstanding offer of 9 years, and I think I can get him back down to 8. This certainly indicates there are ongoing clean negotiations there. The letter also acknowledges the existence of an 8-year offer and that his client wanted to accept 8 years, and yet there was no plea agreement. The bottom line, though, your time is up, and I just want to make sure I understand your question, or your position. The bottom line is, your position is the ineffective assistance of counsel was the failure of counsel to communicate your client's position. I'll take 8. Yes. Okay. You'll have a chance to address this again in rebuttal, sir. Okay. Ms. Avros? Please support and counsel. Counsel. The more the defense attorney went to the prosecutor and asked for a lower sentence than 8, it was counterproductive. He kept going up then. He was making him angry, and it was just absolutely impossible. Well, you heard the last question I just asked Mr. Kierkegaard. It seems to be the gist of what this is all about, and I want you to address it as well. The gist of this case appears to be counsel was ineffective because he didn't convey the defendant's acceptance of 8 years to the prosecutor. What about that? He never accepted the 8-year sentence. Or if he did, as indicated in counsel's letter to the defendant telling him to stop sending letters to the prosecutor. He said that he's irritated because at one point you said you'd take 8, and then apparently he backtracked from that. So he was trying to get it back. I guess he wanted to get a lower sentence. He said stop sending communications to the state's attorney. And if he agreed to 8, and then he says I'll take 7, then that's, as you said, it's a counteroffer, and that means that the original offer is no longer good and he can't go back and renew it later on down the road. And as it became more and more apparent that the prosecutor wasn't going to go back to 8, the defendant kept thinking, well, he offered it once, maybe I can even get it lower. Even in that letter to the prosecutor, he said, how about 6 or 7? And he kept going lower, and it was having just the opposite effect on the prosecutor. Don't we need to have a factual hearing here? No, the facts are pretty clear from the evidence that is in this record. At this stage, don't we accept the pleadings as true? That's correct, yes. And the pleadings show that he never accepted the 8-year offer. That's the bottom line there. As I understand, Mr. Gerke, he says the defendant wanted the counsel to talk to the prosecutor. The counsel refused to do that, so the defendant then wrote a letter to the prosecutor, and that's what made the prosecutor mad. No, the prosecutor was mad according to this letter because at one point he agreed to 8, and then apparently he backpedaled. And he says, I can't go back to him with 7. The letter from the counsel does start off by saying, I understand you've written the prosecutor in an attempt to further negotiate a plea bargain for yourself. I request that you discontinue such practice. Was that what the prosecutor was mad about? Well, I guess the prosecutor, early on in April, the prosecutor had to have a conversation with the court and said he had made him five or six what he considered good offers, and the defendant had rejected all of them. And at that point he was annoyed and said the plea negotiations had ended. Then apparently later on when the court wanted to make certain that Dodd's position was covered, and there was not a Curry situation, he wanted to make some on-the-record remarks and said, ask the prosecutor if he'd made an offer for something less than the Class X, which provided for an enhanced penalty at a minimum of 9 years. And he said, yeah, I'd made my best offer and it was refused. And that's when the defendant said, I want the 8 years. And the court said, look, that's not on the table anymore. And there's this conference between counsel and they come back on and address the court and tell the court that the prosecutor had offered something less than I think it was 12 years. And he wasn't about to take that. So then after he's convicted, the defendant is still persisting. Like he can still negotiate this down to something that he had rejected previously. There was just never, defense counsel can only fall on his sword so many times, and he was just making it more difficult, the defendant was making it more difficult for his attorney to negotiate something reasonable, what he considered reasonable and what the prosecutor considered. You heard the question I asked Mr. Gerke a few times, and let me ask you the same question. Given the direction, try to get 7, if not, I'll take 8. What was defense counsel's obligation and what would you have advised defense counsel to do? Well, I would have advised him that since 7 is not reasonable, and the prosecutor had told him that, then I wouldn't have approached it with 7. Even though his client might want 6 or 7, but that's too bad. He had, I forget how many grams of coke. He told defense counsel, I've got no defense here. It provides for a 9-year minimum, and the prosecutor is supposed to go with the simple possession to knock it back down to a sentence that he finds palatable. I mean, I think defense counsel, 8 years seems to me like it's a pretty sweet deal, and he just didn't see it. So it's your position that the remarks of the defendant to his attorney did not constitute an acceptance of 8 years? Absolutely not, no. Defense counsel's letter says, after previously indicating that you would accept 8, and after I had successfully negotiated your desired sentence with it. So that sounds like... Previously indicated, and that if you previously indicated, and then he does not go for 8, and it's apparent from that, that he backpedals, because he says, well let's see if we can get it now down to 7. Then he writes the prosecutor and says, how about 6? He keeps going one way, and that makes the prosecutor go the other way. And his defense attorney, I'm certain, is thinking, how did I get this guy as a client? So defense counsel hasn't addressed the second argument regarding post-conviction counsel. He didn't get a chance where he asked the questions. Oh, I guess not. So what is his thought? Well, he wasn't the most aggressive proponent here, but sometimes you have to decide whether it's good to blow smoke with the court, or say, you know, this is not the best case. He certainly didn't concede the motion to dismiss. There wasn't any amendment that he could have made to the petition to shore it up. Defense counsel says he should have put in supporting authority. Well, I mean, that's just, I guess, a little bit of lipstick, but I don't know what else he could have done. The record spoke for itself, and as you said, you know, the contract principles indicated that he never accepted the offer, and the court was, I think, made a correct judgment that this case has already been decided, this issue, and the additional material just doesn't change the result on that. Any other questions? Thank you, counsel. Thanks. Mr. Gerke? And I should mention, I apologize, Mr. Gerke, I asked you a lot of questions. You didn't have an opportunity to address the other one, and this might be your opportunity if you wish to do so. I appreciate your honor. Just to begin with the second issue, if I can, to say that post-conviction counsel here wasn't the most aggressive is a severe understatement. What post-conviction counsel said, not only did post-conviction counsel fail to advocate for any single one of his claims, my client's claims, but he misstated the valid claim here and actually argued actively against all of my client's claims. He began his argument by saying, I do concede that this post-conviction petition, quote, stands on pretty shaky footing at this point. He then proceeded to go through every single one of my client's issues in the process of misunderstanding the claim regarding the eight years and coming out and telling the court what the weaknesses of each issue were. He concluded his argument by saying, quote, I do believe that Mr. Robinson's petition for post-conviction relief is rather shaky and this court should rule based upon that. There's absolutely no advocacy here. And as this court held in Shortridge, quote, appointed counsel should either represent defendant's interest in the proceedings or move to withdraw. And where in that case where counsel failed to do both, this court found a Rule 651C violation. Here I think it's clear that counsel, just disregarding the other arguments pertaining to post-conviction counsel, just the fact that he actively argued against my client's claims in court before the trial court showed that he did not advocate for his position. If he had truly believed, I think he'd be wrong, but if he had truly believed that my client's petition was meritless, he should have withdrawn. At least my client would have been able to argue on his own behalf, which is exactly what this court's holding in Shortridge says. He also completely misunderstood the eight-year offer. Mr. I don't know his name, post-conviction counsel, framed the issue as though trial counsel, as though Robinson were arguing that trial counsel was ineffective for failing to secure a specific plea agreement. The actual issue here is whether trial counsel was ineffective for failing to communicate his acceptance of the state's plea offer. That caused the trial court to also rule basically on the wrong issue. The trial court didn't rule on whether trial counsel was ineffective for failing to communicate the acceptance of the state's plea offer. What the trial court ruled upon was whether a specific plea agreement existed. And the exact language of the court is that the court found no, quote, If we conclude from the petitions and what's been submitted in support of it that your client never accepted the offer, is there anything left in this case? Absolutely, Your Honor. I think that even if this court were determined that the petition had no merit as it was presented, then this court would still have to, under People v. Suarez, it would have to remand back because the merits of the petition have no bearing on whether counsel complied with Rule 651c. Especially here, where he misstated the claim, even if this court found that the claim didn't have merit, and where he argued actively against his client's petition. In short, this court didn't make a determination of whether the petition had merit. In fact, counsel told the court, in that case, told the court that the petition didn't have merit. In this case, the same thing. We have counsel saying that this petition is shaky, the court should rule based on that, and that, going through each of his claims, telling the court why the petition didn't have merit. In addition, I think it's important to recognize that, had post-conviction counsel done a better job of amending the petition, or marshalling the facts, Amending it in what way? Well, he could have amended the petition, Your Honor, for example, to include the nine-year claim that was acknowledged in Mr. Dodds' letter to my client, and which was also stated in my client's affidavit, where he said, after the eight-year offer was revoked or was lapsed, I tried to accept the nine-year offer when I heard about it, but counsel told me there was nothing he could do about it. I think that would be a first. I mean, what Mr. Robinson's petition indicated was that counsel failed to protect my interest during clean negotiations, and that nine-year offer was never brought up, and it would have been another example of why counsel may have been ineffective during clean negotiations. I'm not sure I follow that. What was the problem, the potential ineffectiveness regarding the nine-year offer? Well, the nine-year offer, what Robinson's petition said was that after the eight-year offer was revoked, I learned of a nine-year offer, and when I tried to accept it, counsel told me it was no longer on the table and didn't do anything to verify whether the offer still stood. And if you look at defense counsel's letter on July 16th, it indicates that there was a nine-year offer outstanding at that point, and by the way, I think I can get it back down to eight. That letter was dated July 16th, and we know that a week later on July 23rd, there were no outstanding plea offers. So there's a serious question here as to whether counsel even adequately conveyed that offer. It appears as though this letter is the first time he ever made my client aware of the nine-year offer, and we know that it's no longer available just six days later, and he only made it available to him through a letter. And just if I can speak to my own experience mailing with clients, it often takes a few days, if not a full week, to get letters back and forth. And so I think the letter, in conjunction with the affidavit, raises serious questions as to whether counsel was adequately conveying plea offers, especially considering it's a nine-year offer. I understood your argument to be that counsel did not communicate an acceptance for the eight years, but you also say now that he did not communicate an acceptance to the nine-year offer. Yeah, well, it's also in my petition, yes, I am saying. I didn't get to that point because of all the questions you're asking. Okay, thank you, counsel. Thank you, Mr. President. I advise that we recess until 10 p.m.